(Supreme Court, Trial Term, Rensselaer County. January, 1915.)

1. RAILROADS ⬅134—LEASE—CONSTRUCTION—INCOME TAX—DUTY TO PAY.
   Where a lease made in 1871, between plaintiff, a domestic corporation, and the defendant company, which after such date operated plaintiff's railroad and other railroads of which plaintiff was lessee, all of which were covered by the lease, bound defendant "to discharge all taxes and assessments of every description," it bound it to pay the then existing income tax, so far as it was assessed against plaintiff.
   [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 423–433; Dec. Dig. ⬅134.]

2. RAILROADS ⬅134—LEASE—CONSTRUCTION—INCOME TAX—DUTY TO PAY—"TAX"—"DUTY."
   Where such lease further provided that if, by any change of law, the present "tax or duty" should be required of plaintiff's stockholders, defendant would pay the same, defendant was bound to pay the income tax paid by plaintiff to the United States for the year 1913; such provision

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

clearly showing that the parties had in mind the federal statute, wherein the word "tax" and "duty" were often used interchangeably.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 423–433; Dec. Dig. ☞134.

For other definitions, see Words and Phrases, First and Second Series, Duty; Tax.]

Action by the Rensselaer & Saratoga Railroad Company against the Delaware & Hudson Company. Demurrer to complaint overruled.

G. B. Wellington, of Troy, for plaintiff.
Walter C. Noyes, of New York City, for defendant.

CHESTER, J. The action is one brought to recover income tax paid by the plaintiff to the United States for the year 1913. The defendant demurs to the complaint as not stating sufficient facts to constitute a cause of action.

The plaintiff is a railroad corporation organized under the laws of New York, and its corporate existence has been duly extended to January 1, A. D. 2500. It has a capital stock of $10,000,000, divided into 100,000 shares, of $100 each, of which 92,000 shares, of the par value of $9,200,000, are outstanding in the hands of the public. The defendant is also a railroad corporation, with a capital at the present time of $42,503,000, divided into 425,030 shares, of the par value of $100 each.

The plaintiff and the defendant on May 1, 1871, entered into a lease bearing date on that day, a copy of which is annexed to the complaint, under which the defendant, for the considerations therein mentioned, entered into possession and occupancy of all the property and franchises of the plaintiff, except certain cash on hand at the date of the lease, amounting to about $50,000, and has continued in such possession and occupancy ever since. The parties under date of May 19, 1874, made an agreement amending and construing clause 28 of such lease, which is also annexed to the complaint.

•Since the lease the defendant has operated the railroad of the plaintiff and several other railroads, of which the plaintiff was lessee, all of which are mentioned in and covered by the terms of the lease. During the period since that time the plaintiff has not been engaged in business, and its only income has been the rent paid by the defendant, which has been paid each year as provided by the lease, and in addition thereto not to exceed $3,600 each year, interest received from the investments of the plaintiff.

Under section 2 of the act of Congress of October 3, 1913, known as the "Federal Income Tax Law" (38 U. S. Stat. at large, c. 16), the plaintiff was required to make a return showing the gross amount of its income arising and accruing from all sources to the plaintiff from March 1 to December 31, 1913, and the amount of its expenses during such term. Such a return was made by the plaintiff on or about March 1, 1914, and in it the facts concerning its contract relationship with the defendant were set forth. In it, it was stated that the defendant paid directly to shareholders of the plaintiff dividends amounting to

$8 per year per share, and that in addition thereto the defendant had paid directly to bondholders the interest on the outstanding bonded debt of the plaintiff, the principal of which amounts to $2,000,000.

The United States assessed against the plaintiff an income tax amounting to $6,659.77, arrived at as follows:

| | | |
|---|---:|---:|
| Dividend on $10,000,000 capital stock, at 8 per cent | $800,000 | 00 |
| Amount received under the lease from defendant for organization purposes | 1,000 | 00 |
| Amount of income from investments | 3,600 | 00 |
| | $804,600 | 00 |
| Five-sixths of this amount is | $670,500 | 00 |
| Deduct therefrom disbursements from March 1, 1913, through December 31, 1913 | 4,523 | 40 |
| Leaving net income from March 1, 1913, through December 31, 1913 | $665,976 | 60 |

One per cent. of this amounts to $6,659.77, the tax above mentioned. Such tax was erroneous to the extent of $533.33. The error arose from computing the tax on the entire $10,000,000 of capital stock of the plaintiff, without taking into account the fact that $800,000 thereof was not held by the public and upon which no dividends were paid. Eight dollars a share on 8,000 shares is $64,000. One per cent. of this, the normal tax, is $640. Five-sixths of that is $533.33, which deducted from the tax actually assessed leaves $6,126.44. The plaintiff has paid the entire tax assessed, and has demanded repayment from the defendant of said sum of $6,126.44, which has been refused, and this amount the plaintiff seeks to recover in this action.

All the facts herein stated are alleged in the complaint. The question presented is whether under the lease of May 1, 1871, there is an obligation resting upon the defendant to pay the income tax in question assessed against and paid by the plaintiff, less the amount deducted for such error.

The lease provides for the payment by the defendant of the annual rents accruing to the lessors on the several other railroads leased to the plaintiff; the payment to the plaintiff of $1,000 annually for the expense of maintaining its organization; the payment by the defendant of interest on the bonded indebtedness of the several roads and dividends on stocks and that such interest and dividends shall be paid directly to the respective bondholders and stockholders. It provides that the term of the lease shall be during the full end and term of the charter of the Rensselaer & Saratoga Railroad Company and during every and any renewal or continuance thereof by reorganization or otherwise. It also provides that the defendant during the term granted will, at its own cost, risk, and expense, maintain, preserve, and keep the leased roads in good working condition and repair and suitable for the transaction of all the business that can be reasonably done thereon, and will also maintain, preserve, and keep the side tracks, station houses. machine shops, fixtures, appurtenances, tools machinery, rolling stock, and equipments in good repair, order, and condition, and will operate, employ, and use the said railroads, their fixtures, and ap-

purtenances, in such manner as to perform in a proper manner all the business offered which can be reasonably done upon the same, and will perform all and every duty towards the public which the Rensselaer & Saratoga Railroad Company would be legally bound to do and perform under its charter, if the lease had not been executed.

Paragraphs 18 and 19 of the lease relate to taxes. They have an important bearing on the questions presented here for determination, and will be referred to more in detail hereafter.

Paragraph 20 of the lease provides that the lessee shall pay all the expenses of operating the roads and all damages which may be recovered against the party of the first part, the Rensselaer & Saratoga Railroad Company, for injuries to persons or property, or for negligence, or for breach of duty as carriers or warehousemen; and paragraph 21 provides that, in case of default of payment of rent, interest, and dividends after 60 days, the lessor has the option of terminating the lease and re-entering and taking possession of all the leased property.

[1] Under the lease the naked legal title of the property, real and personal, remains in the plaintiff; but the use, possession, and enjoyment thereof, and of all the business and franchises of the plaintiff, are transferred to the defendant forever. The transfer of 1871 was a lease, and not a deed. The plaintiff has deprived itself of practically everything except a mere corporate existence, and has no relation or duty with respect to any of the properties transferred, but it has the right of re-entry in case of the failure of the defendant to perform its agreements. This being the effect of the lease, it is fair to assume that the parties intended to provide by it that the plaintiff should not be required to make any payments of any kind for any purpose whatever, except such expenses as the maintenance of its organization should involve. For this purpose the lease provided that the defendant should pay $1,000 a year to the plaintiff. The only income the plaintiff had other than the $1,000 was the amount which it received annually as income on investments made of the cash retained at the time the lease was executed, for it was provided that the interest on bonds and the dividends on stock should be paid by the defendant direct to the respective holders of the same, and not to the plaintiff. It would seem that under the circumstances it might fairly be assumed that one purpose of the parties in making the lease was to provide that the defendant, the lessee, should be required to pay all taxes of every kind that might be levied against the plaintiff. It remains to be seen whether the language employed in the lease has accomplished that purpose, for if it has the plaintiff can recover the tax in question. If it has not, the plaintiff must fail in its action, for the court cannot make or amend a contract for the parties.

Paragraph 18 of the lease provides that the party of the second part, the Delaware & Hudson Company, shall pay—

"all taxes and assessments of every description assessed, imposed, levied, and accruing upon the railroad's property and effects hereto demised, and upon the business done upon the said railroads from the date hereof, in the same manner and to the same extent as the party of the first part [the Rensselaer & Saratoga Railroad Company] would be liable to pay if these presents had not been executed, and if by any change of the law present tax or duty required of the said party of the first part shall be required of the said stock-

holders [that is, the stockholders of the Rensselaer & Saratoga Railroad Company], then the party of the second part shall pay the same."

It is claimed on behalf of the defendant that the tax in question is not a tax upon the railroad's property and effects, nor upon the business done upon the same, within the meaning of the paragraph of the lease above mentioned. I am unable to agree to this. It is true that this is not a tax directly upon any assessed value of the railroad's property. It is not measured by any value put upon the property by assessors; but it is measured by the amount of the plaintiff's net income, and it has been assessed as required by the law directly against the plaintiff, and not against the individual holders of the plaintiff's stock. I think it may fairly be regarded as an assessment based upon the business done upon the railroads leased by the defendant, for it is measured by the net profits arising from the operation of such railroads, so far as they are represented by the dividends paid. This principle seems to have been held in substance in Michigan Central R. R. Co. v. Slack, 100 U. S. 595, 25 L. Ed. 647. That was an action to recover from the collector of internal revenue an income tax claimed to have been improperly paid. It was assessed under section 122 of the old Internal Revenue Law of Congress (Act June 30, 1864, c. 173, 13 Stat. 223), as amended by the act of 1866 (Act July 13, 1866, c. 184, 14 U. S. Stat. at Large, 98), and was assessed upon certain "earnings, profits, incomes or gains" of a railroad company, and it was held to be a tax on the business of the company, or in other words on the net earnings, which are the results of the business of the company.

At the time the lease in question was made there was an income tax law in force, and the lease in paragraph 19 contains a provision that:

"The party of the second part shall not be required to pay the present income tax upon the aforesaid interest and dividends or any tax thereon imposed, or hereafter to be imposed by whatever name the same may be called."

And it contains the further provision that:

"If the law under which the tax is or may be levied, requires the party of the second part to pay the same then the amount of tax so paid may be deducted and kept back from and out of the aforesaid interest and dividends."

Under the Civil War Income Tax Act, which I have called the old Internal Revenue Law, there was a tax on corporations based on gross income and on profits, including dividends and interest paid, and, in so far as dividends were paid, the stockholders ultimately paid the tax, for it was withheld from the dividends. The same was true with respect to interest paid to bondholders, but as to gross earnings and undivided profits the corporation paid the tax. Under the present Income Tax Law, the normal tax of 1 per cent. is levied against the corporation, and is measured by the amount of net income accruing from business transacted and capital invested in the United States. With respect to such normal tax, it is not assessed against, nor is it to be paid by, the stockholder. He is not even required to make a return of the amount of dividends received from his stock in a corporation which has paid the normal tax on net income.

[2] It seems to me, as is urged by plaintiff's counsel, that the defendant undertook by the lease to pay the income tax levied under the

old law, so far as it was assessed against the plaintiff, when it agreed "to discharge all taxes and assessments of every description" in paragraph 18 of the lease, for the only federal tax then in existence imposed upon the plaintiff was of that character. The parties also stipulated in the same paragraph of the lease that, if by any change of the law the present "tax or duty" should be required of the plaintiff's stockholders, the defendant would pay the same, showing quite clearly that they had the federal statutes in mind, for the words "tax" and "duty" were often used interchangeably in such statutes, rather than in the laws of the state. The parties having such federal statutes in mind, and apparently to avoid relieving the plaintiff's bondholders and stockholders from their ultimate liability to pay the then existing income tax, provided in paragraph 19 of the lease that the defendant "shall not be required to pay the present income tax upon the aforesaid interest and dividends."

The entire lease, fairly interpreted, means, in my opinion, that anything the Rensselaer & Saratoga Railroad Company was obliged to pay by way of taxes the Delaware & Hudson Canal Company would continue to pay, and anything taxed against interest and dividends which would ultimately fall on the stockholders and bondholders of the plaintiff the Delaware & Hudson Canal Company was not required to pay. There being no tax upon dividends under the present law, there is nothing of that character for stockholders to pay. This is not the case under the old law. Under that law every dividend declared and paid by the corporations named in the statute was reduced by a tax thereon, and so was paid by the stockholder, whether he had a net income or not. Under the latter law no dividend is reduced by any tax, for there is no normal tax thereon.

The present income tax assessed against the plaintiff is not an income tax upon dividends, to be paid by the party receiving the dividends, as it was under the old law, which the stockholders were obliged to pay; but it is an income tax assessed upon the plaintiff, based upon the amount of its income from every source. Under the present law the stockholders are expressly relieved from paying a normal tax on stock dividends. The tax in question is levied directly against the plaintiff as a corporation, and is not assessed against the stockholders thereof, and for that reason it seems to me, under the fair interpretation of the lease in question, it is a tax that the defendant has assumed and agreed to pay.

The question is not now before me for determination as to whether, if the defendant pays this tax, it can in turn withhold it from the interest and dividends which under the lease it has agreed to pay directly to the stockholders and bondholders of the plaintiff.

If this construction of the lease is not correct, and if the tax in question be continued for a series of years, the plaintiff would be wholly unable to pay it for lack of sufficient income, because the comparatively small amount of principal it owns would soon be exhausted. It has no earning powers outside of the income of its invested funds. The inevitable result would be the insolvency of the plaintiff and a receivership of its property, the legal title to which it still retains, and the consequent depriving the defendant of the beneficial use and enjoy-

ment thereof, unless, indeed, the defendant came to its rescue and paid the tax.

It is urged by the defendant that in no event can that portion of the assessment which is based upon the item of $3,600 of income which the plaintiff received as interest on its investments be charged against the defendant, as these investments are in no way connected with the operation of the leased property. Even if there be force in that suggestion, it is unimportant here, for the only concern of the court on this demurrer is whether the complaint states *any* cause of action. It is not material now that the plaintiff is seeking more relief than it may ultimately be determined to be entitled to.

The demurrer should therefore be overruled, with costs, with leave to the defendant to answer upon the payment of such costs.

Demurrer overruled, with costs, with leave to defendant to answer upon payment of costs.